Attorney General, Ms. Kasdan. Good morning, Your Honor. Let me just ask Judge Fischer, is it nice and warm in Arizona? Pardon? It is not. Please join us. Thank you, Your Honors. I'm glad that it's not warm there. May it please the Court. Just make sure you speak loudly into the mic so that Judge Fischer can hear us. Yes, of course. Thank you very much. May it please the Court. Marsha S. Kasdan representing Wilson Guadalupe. So do we go with the Sixth Circuit or the Ninth Circuit? Well, I would like to speak to that and hope that we go with the Ninth Circuit. So, Your Honors, Honorable Justices of the Third Circuit, Wilson Guadalupe was placed into removal proceedings like thousands of non-citizens by a document that was required by statute. It was supposed to be a notice to appear, except it wasn't. By document, it was a piece of paper that failed to inform him about the date and time to appear in front of the immigration judge. A later piece of paper called the Notice of Hearing, which is not styled as a notice to appear. It was three days later, right? Yes, it was. So why isn't that enough? Because statutorily, we go back to 1996 when IRA-IRA was formed. And specifically, it was formed by statute, by congressional intent, to make sure that things were done in a way that gave people the correct notice of time and place. Because it was the history at that time that what happened was a document entitled the Notice to an Order to Show Cause, a two-step process, needed overhaul. There were terrible problems that needed to be fixed. There was an Order to Show Cause followed by another document that was to give the Notice of Hearing time and place. But in fact, it sometimes didn't get to the respondent. There were removals in absentia at that time called deportation. And specifically, the congressional intent was to fix this system, which is why the two-step process approach was rejected by Congress. And Ortiz-Santiago v. Barr, 927 F. 3rd, 956, the Seventh Circuit talks of a report of the Judiciary Committee of the House of Representatives and noted that this legislation was designed under the new law that there will be a single form of notice. And what we're talking about here, Your Honors, is not a situation where you can fix something by a subsequent piece of paper. The notice to appear is specific. It's a quintessential definitional word that has been defined by statute. Let me ask you a question. A problem I find parallel to this. Didn't Mr. Guadalupe go and spend four months in Ecuador? I'm sorry, Your Honor. Didn't Mr. Guadalupe go to Ecuador for four months? Your Honor, and I hope that I'll be able to speak to those issues. Well, speak to them right now. Yeah. That the notice to appear did not cut off his time. He came here when he was 28. He's 48 now. He has more than 13, excuse me, he has almost 15 years of presence that followed the date of the original defective notice to appear. It's not a question of completing, Your Honor. Well, what about the four months in Ecuador? The four months in Ecuador do not cut off his time if he resumes a new period of 10 years, which in this fact he has done. So was the four months prior to the 10 years? Yes, Your Honor. In other words, the notice to appear I believe was 2007. And what happened is if that doesn't cut off the time, the time continues to run. And therefore he is entitled to have a new period of time. And at this point that new period of time is 14 years. That's right, this way. When did he go to Ecuador for four months? He went to Ecuador for four months in 2004, I believe, Your Honor. 2004? Yes, I believe so. And the notices we're talking about were in May of 2007. Yes, Your Honor. So since 2007 he's been in the United States. Yes, Your Honor. He was only out of the country for an illness in a family. His mother was very, very seriously ill. And he returned within several months. I'm not prior counsel. I'm not 100% certain of the dates. But I can tell you, Your Honor, that he has been here for almost 15 years. So when he went to see his mother, that was less than three months? No, Your Honor. It was almost four months, I believe. But that was back in 2004? That was way back in 2004. And at this time he's been here almost 15 years. Going on, it's important that the Ninth Circuit summarized Pereira, as we well know, and said that a notice to appear within the meaning of the statute does not terminate an alien's residence. However, what we're talking about here and the concern of our court is about a subsequent notice of hearing. And it is specific in the law that the notice to appear is stylized in a certain way. It is a vehicle that was created by Congress. Whereas a notice of hearing is something that is created as an administrative document to change normally a date or give a future date of a hearing. And the notice of appear is nothing like the notice to appear. And it's not a question, Your Honors, of does it say date and time? Yes, Your Honors, it says date and time. But specifically it was congressional intent and Congress has spoken. And the Supreme Court later spoke in Pereira and told us specifically, contentional definition, this is what a notice to appear must be. Because we're dealing about substantial rights. Rights that affect a person to stay in this country after a lifetime or not. Things that affect him in such a monumental way that we have to be careful. And it's not the ability neither of the BIA, of the Board of Immigration Appeals, or any agency to determine or redetermine when the Supreme Court has spoken. So how much deference, if any, do we give BIA? I'm sorry? How much Chevron deference, if any, do we give BIA? I don't give the BIA, I don't feel that this Court should give the BIA any Chevron deference. Because the first step is, is it something that we can't understand? Is it something that is ambiguous? Or is it clear? And if it's clear, we know that Chevron deference stops there. Besides that, the Board of Immigration Appeals is not your court, justices of the Third Circuit. The court is in the best position to determine what a statute means and what a statute doesn't mean. Well, the Immigration and Nationalization Act, I think in some aspects perhaps the BIA is in better position to understand it. But I agree with you generally that interpreting law, that's what we're paid our magnificent salary for. And we also pay attention to when our court writes and when the Third Circuit writes, and it says in footnote 34 to Orozco, that this notice to appear, which was the second notice to appear in Orozco, which was to correct the place of the court, that this notice to appear was not a completion, not a supplement. It was the first notice to appear. Because it was the first right one. The notice to appear that does not state what the statute says it must state. And Pereira made it simpler. It only spoke to time and place. And a notice that doesn't appear to do that, the notice to appear that fails to do that is defective and counts for naught. It counts for nothing. It's not something that we can use and go forward with. So if we agree with you, what do we do? What happens next? There is a mistake and there is no time and date. Well, there is a solution. Send a notice to appear and correct it. It's not something that the Department of Homeland Security... What are you asking us to do in this case? I'm asking you to find the plain meaning of the statute. I'm asking us to look at the statute and to say that when I see a word, it says a notice. It refers to a single notice. When I see a word, I don't want it to be like Alice in Wonderland. You want us to send it back to the Board of Immigration Appeals, to send it back to the immigration judge, is that? That's correct, Your Honor. Thank you. That is exactly what I wish. The question is whether you can make words mean different things. That's all. That's what Alice said, and I'm asking you not to. I'm asking you to look at the plain statute, as did the Seventh Circuit, the Ninth Circuit, the Sixth Circuit, didn't tie it to any statute. Didn't tie it to any regulations. It simply opined what it wished to feel. And I think that our circuit acts differently. I think we need to respect the plain meaning of the statute and the intent of Congress. They went from two notices to one for a reason. It was because they wished it to be right. They wanted to get it right. And the government can do it. Please, let's have them do it so that people won't be hurt and the law will be upheld and respected. Thank you. Judge Fischer, do you have any questions? Yes, I do. Ms. Kasdan, our court decided Orozco in 2016. And of course, the Supreme Court later decided Piera in 2018. But Piera was a case in which there was not a subsequent notice of hearing sent to Piera in that case. So why can't we reconcile our jurisprudence in Orozco with the jurisprudence of the Supreme Court of Piera to find that this notice, which I agree, everybody agrees is essential. Final place is essential. But it's possible to have this dual notice. And Piera essentially didn't deal with that because there wasn't any secondary notice for Piera. Yes, Your Honor. As of April 1, 1997, Congress spoke. And the court has spoken. And it is clear that there is a single notice of appearance. And it's a specific styled document. It is not a notice of hearing, which is an administrative document. It is specific. It is a quintessential, definitional situation where the statute is plain and clear. You can't cobble a notice to appear, which is required by statute, and just because you feel that it's easier, stick on a notice of hearing and then expect our court to uphold that that's just and right. Because we can't just do anything we please. We are bound by the law. And we are bound to look at the clear meaning of the statute. So we cannot ignore people's substantive rights as if it's an administrative or ministerial matter. This is substantive law. This affects the law of people to the extreme. And this gentleman will have to prove extreme suffering to a U.S. citizen, child, parent or spouse if he is to be successful. But in the meanwhile, it is essential that we not give in to this talk about doing whatever we please. This is not Zen. This is a court of law. We are bound to look and uphold and examine. The clear meaning of the statute and go by it. And that is why, Your Honor, we must do this. Not out of convenience. And if the court or if Congress had wished to be flexible, they would have. So for example, Your Honor, for example, the NTA says that you can serve somebody by mail if impractical to do it otherwise. But this is not a question of impractability, Your Honor. The court cannot allow flexibility when Congress has stated that it must contain the time and place. I can't, Your Honor, do whatever I want when I'm filing a brief. I must follow statute if it's statutory. If it's administerial or something that can be re-examined. If it's remedied, then not. But in this case, Your Honor, we're talking about substantive rights and they must be looked to by looking at the clear meaning of the statute, which is defined. Thank you, Ms. Katzen. You answered my question. Sorry, Your Honor. I know I was long-winded. I apologize. That's okay. I just wanted to let you know you answered my question. Thank you, Ms. Katzen. Ms. Corliss, good afternoon. Good afternoon. May it please the Court, Lindsay Corliss for the respondent. This Court should deny the petition for review. The crux of this petition for review is whether the Board correctly found the stop-time rule for purposes of cancellation of removal can be triggered through a combination of notices conveying all of the information prescribed by 8 U.S.C. 1229A. How do you reconcile that with Pereira? With Pereira? Well, Pereira doesn't address this particular issue. It does address what a notice of appeal must contain. It does address that. It doesn't address whether or not it can be achieved through a combination of notices. And in fact, I'd like to point out that Pereira himself argued to the First Circuit that his time didn't stop until he received his notice of hearing, which was after the 10-year period of continuous residence. So he himself argued that the First Circuit should follow the Third Circuit in Orozco, Velazquez, and find that a combination of the notices is what... How is that relevant? What he argued and lost to the Supreme Court, how is that relevant? What Pereira argued and lost before, because it shows that the Supreme Court didn't necessarily need to address that. That issue didn't come up. It's not stated at any point in the decision. And both the Fifth Circuit and the Sixth Circuit have specifically stated in their decisions in Pierre Paul and in Garcia-Romo that the Supreme Court didn't address this particular issue. What the Sixth Circuit found was that it is satisfied by a combination of notices as long as all of the information that is prescribed by the notice of appeal statute, is properly served upon the petitioner. The way that they analyze the text there is that they note that what is required is a written notice, and then in parentheses, I'm saying refer to in this section by the term, a notice to appear. So they're saying that what was important is that this person receive written notice of these items. And they also make the analogy to if you send in your book chapter by chapter to your editor, you still just sent in one book. So they're taking it from the perspective that there's only one notice to appear, but it's given in parts. Kind of like sending in your tax return piecemeal? Can you do that? I'm sorry, I missed the beginning of your question. You do tax returns piecemeal? I suspect that you probably kind of mentor taxes. You know, isn't this a type of situation where a bright line rule would be very easy to enforce, and very easy for the immigration service to make sure when they set out a notice to appear that they put the time and place. And in Orozco, what was it, two years between the time of the original notice and the designation of the time and place? And, you know, I wrote that and I thought it was right at the time, but if the Supreme Court tells me to do differently, I am very happy to do what they want done when you have a situation where certainty is easily accomplished and makes a rule that's a lot easier to enforce. Well, the Supreme Court does say that they believe that such a system could be designed, so I'm not going to argue with that. But the question here is whether or not, did the Supreme Court actually overrule Orozco-Velazquez, such that this court has a blank slate? And so the Supreme Court set about remedying the circuit split, and they specifically mentioned that this court in Orozco-Velazquez was the only court to find that there was a blank slate. That a notice to appear that lacks the time and date of a hearing is not sufficient to trigger the stop time rule until the combination of notice. So the Supreme Court was quite aware of this and referred to it. They abrogated everyone else that disagreed with the Third Circuit, but they did not abrogate the Third Circuit's opinion on this. And certainly, this court has even noted in Nicomo, which addressed Pereira in the context of the jurisdictional question, they noted that Pereira is very careful about how narrow its decision is to be read. And Nicomo, the court, actually cautioned against expanding that very narrow holding beyond anything else that the Supreme Court didn't quite say. And since this court... But when we have a situation where there is something that the Supreme Court didn't quite say, shouldn't we, as a lower court, interpret what the Supreme Court has said in the more restrictive way rather than the less restrictive way? I think that that would be true if there was some implication that that was how the Supreme Court intended their decision to be read. Instead, they indicated that their decision should be read the other way. They didn't abrogate Orozco-Velasquez. They resolved the circuit split in favor of the position that this court took rather than in matter of Camarillo, which the other circuits deferred to. So it seems as though while they couldn't reach the issue of... The Supreme Court could have reached the issue of Camarillo and the notices could have completed all of those requirements. But they were very careful about their judicial restraint in that area. So I don't think that we can extrapolate from the decision that they intended to have a holding that they had an opportunity to make but chose not to. And you can see in both the Fifth Circuit and the Sixth Circuit, they both comment on how this was not part of the Pereira decision. And then they actually go through a textual analysis there and they find that nothing in that... Nothing in those two provisions of the statute specify that a combination of notices is not permissible. And in fact, the Sixth Circuit goes so far as to say that it's unambiguous that a combination of notices can satisfy that. But reduced to its essence, doesn't Pereira stand for the proposition that a notice to appear has to include a time and a place? Yes, it does. But I guess the government's position here is that a notice to appear can be considered to be a combination of documents. A notice to appear is shorthand for written notice. And that's how the statute is written. It says written notice, parentheses, referred to in a section as a notice to appear. So that written notice is being satisfied through more than one document. But the written notice of those things needs to be provided in order for it to constitute a notice to appear. And that's why when the Sixth Circuit is looking at the Ninth Circuit decision, part of their problem with the Ninth Circuit decision is because the decision on whether a notice to appear can actually be read to include a notices to appear. Because Judge Callahan, in her dissent, stated that the dictionary definition of a can also include plurals. And the Sixth Circuit said that's beside the point. Whether a stands for just the singular one, or a can stand for multiple persons, things, or documents, is irrelevant because there's really only one notice to appear. It's just that that notice to appear is coming in different pieces. Suppose you have a situation, in this case it was a three-day gap, right, between the first and the second. Suppose you had an extended gap. And a lot of folks that receive these notices of appeal may have many, might be living in different places over an extended period of time. And they would never get that second or third notice of appeal with the right information. What do we do? Well, so I think that that's where it really becomes important that we keep in mind that they have the right to show that they didn't receive those notices. It's also really important that the first notice, when they're right there, they have this information. Well, sometimes they are, and sometimes they're not. Well, it's the first time that they're going to be served with this particular document, right? The first time that they are served the notice to appear, they also are served notice that they are required to keep the immigration courts updated on their current address. I get that, but that's the first time they get this notice. Shouldn't it include the time and place? And if it can't be done, that particular hearing can't take place that day, they could be given another notice of appeal with a time and place. I certainly agree with you that this sounds possible. It's just, is it required by statute? I mean, isn't it? It would be in the future for immigration people very easy if the original notice doesn't have time and place to send out another notice to appear with time and place. That would cure everything, wouldn't it? I don't dispute the point of efficacy. I kind of know the counter arguments. I know the reason why. The reason why is because the immigration courts didn't want DHS to be able to schedule their hearings for them. The immigration judges wanted to be able to control their own dockets and hold hearings and do their schedule and decide to move a case or whatever on their own and not have that scheduling come from DHS. But that's really beside the point. Because I understand your position and the Supreme Court took the position that it would be more efficient for, or that it's at least possible to provide that information. But the question then is, is it required by statute for the agency to do so? And at least the Fifth and the Sixth Circuit have already said that it's not. This court specifically talked about why it's not. This court says that Congress's incorporation of 1229A in its entirety, meaning because there's an A1 and then there's an A2. What are you reading from? I'm reading from Orozco Velasquez. I can give you the star page. 83. It says, Congress's incorporation of 1229A in its entirety conveys a clear intent that the government may freely amend and generally supplement its initial NTA. But to cut off an alien's eligibility for cancellation of removal, it must do so within 10 years of continuous residence, as identified in 1229BB1A. Then the court goes on to specifically state that, the various requirements will not stop the continuous residency clause until the combination of notices properly served on the alien charge is removable, conveys the And, and as Pereira does not address that in the lease, and in actually specifically doesn't abrogate this decision, and also certainly was aware of this, of this conversation, and chose not to weigh in and instead chose to state that, that their decision should be read very narrowly. I don't think that there's any reason for this court to go against this prior precedent that hasn't been in any way interrupted by Pereira. I just do want to say one more thing about the Ninth Circuit. The Ninth Circuit's law is not completely settled at this point. There's an en banc petition that is pending. The court ordered supplemental briefing on the issue of harmless error, which, if this court is interested in harmless error, I'm happy to discuss it. So the Ninth Circuit may be looking at this case again. It was a two-to-one decision before them, and Judge Callahan's dissent was quoted in the, it's relied upon heavily by the Fifth Circuit and Pierre Paul. So at the very least, one could say that reasonable minds are disagreeing about whether or not a notice to a peer can be served, can be satisfied by a combination of notices. So in that case, then, since it seems as though there is most definitely at least ambiguous, then the Ninth Circuit may be looking at this case again. And, of course, the court's decision to deference would be owed to the agency interpreting its own statute. That's good. So let's talk about that. How much deference should we, if any, give to the agency interpreting Supreme Court decisions? Well, no deference for interpreting Supreme Court decisions. Deference for interpreting the INA. So it is our position that Pereira does not address this particular situation, and in fact, couldn't address it because it wasn't raised there, and in fact, the opposite was raised by both sides. So if we're looking at this anew, the agency is owed deference when it's interpreting the INA. They can say, this is what a notice to a peer, when we are setting our own, when we are starting our own proceedings, this is how the statute says we're supposed to do it. And so they do have expertise in that area. And they rely on several things that bolster the reliability of that analysis. They're looking at the long history of interpretation, the fact that prior to the matter of Camarillo, which was overturned by the Supreme Court, that seven different courts had found that the combination of notices satisfies the notice to a peer requirement in order to stop time. So they're looking at history, they're looking at the text, and they're also considering what the Supreme Court said. I see that my time is up. Yes, Ms. Corliss, I have a couple of questions. Would you clarify for me again, I know you've touched on this, but would you clarify for me again the significance of footnote 4? I'm sorry, I will have to just quickly look and see what footnote 4 says. Footnote 4, it says, the court granted certiorari to resolve the division among the courts of appeals on a simple but important question, taxpayer destruction. The service adult, dialed as a notice to appear that fails to satisfy the items listed trigger the stalled time law. Okay, fotenote 4. And then it cites Olasco, it says compare Ovasco with the series of cases from the other circuits. So you alluded to that footnote earlier in your argument, but would you answer for me again the significance of that statement? That seems to me to be a statement by the Supreme Court that Orasco was a hot liar from the other circuits. And that was part of the reason why this petition for search warrant was granted. Yes, that is certainly what Carrera seems to be saying. That was the circuit split. The third circuit was the only circuit that stated that the stopped time rule is not triggered until the combination of notices. And then the Supreme Court ultimately overturned everyone that disagreed with the third circuit, but left the third circuit's decision intact. It left it intact, so it didn't abrogate the third circuit's decision, so that is why it is our position that the third circuit's case in Orasco-Velasquez remains good law. So you don't think that that, okay, all right, that's why I wanted to clarify that. The second question I have for you is this, that I'm looking at the copies of the notice to appear in this case and the notice of the hearing, and the notice to appear comes from the Department of Homeland Security, and the notice of hearing comes from, it appears to be coming from the immigration court. How is that service made? It's unclear to me from that document as to how the petitioner here specifically gets notice, the actual notices contained in those respective documents. So he will be served by DHS, and there's always a box where they can check to show how he was served that, and then he provides his address to the immigration court, that's part of his, one of the things that he is required to do, and then the immigration court then can send out a notice of hearing to schedule his hearing. I do note that if he does not receive that notice and does not show up at his hearing, he does have an opportunity, he can always file a motion to reopen and rescind his in absentia order saying that he didn't get adequate notice, and that is a case that comes up sometimes, and it is a remedy that's available. And in this case, Mr. Guadalupe in fact did show up at the hearing, so he received notice, you can infer from that that he received the notice of hearing. Yes, and I think that that is probably the root of why the Ninth Circuit is interested in briefing on harmless error. You know, Mr. Guadalupe was in the same or even better position of someone who received notice of hearing with his notice to appear, in that he received notice of both items, but his period of continuous residence was allowed to run just a little bit longer. So in that case, in his case, even if there is an error in not having that information on the notice to appear, it didn't actually affect his abstinent rights. Okay, thank you. Thank you. Thank you. Thank you, Yonas. The notice to appear and its style versus the notice of hearing, as Judge Fisher commented, one is sent by the DHS, the government, and the other is sent by the court. They don't look anything alike, and the notice of hearing is sent by ordinary mail. So your opportunity to give notice to a noncitizen needing this notice of the hearing happens at the first instance, not at later instances. The notice of hearing is subject to ordinary mail, where there's household failure. How do I know that? I've been practicing immigration law for 22 years, and it happens more often than I'd care to tell you. Also, I recently read an amicus brief. Let me interrupt you. Yes, Your Honor. It appears that the certificate of service on the notice to appear was also sent by what they call regular mail. The notice of appearance by regular mail? It can be, Your Honor. It can be, but when you have a situation, if I might answer, I don't want to interrupt. Your Honor, yes. If you have a situation where you have more than one notice, you have double your chance for situations where notice never reaches the person. And in this case, we hope that the person receives it, but they don't even know about bringing the vehicle of a motion to reopen unless they actually receive notice that they missed it. So the law is there. The notice to appear was designed by Congress on that April 1, 1997 date to make changes, and among them is to avoid those terrible problems that happen when the notice is not a single document. And I believe that Pereira does speak to a single document. And I believe that Orozco did foreshadow the coming of Pereira, because it was going to be a single document. And he was concerned about giving the government, giving the Department of Homeland Security the right to serve any piece of paper it wanted and then later supplement it. And they talked about a blank piece of paper, and is that what we're going to defer to? And Congress has spoken, and the Supreme Court has spoken. And I believe we have to respect the fact that it is plain language of the law. Under the government view, it could provide notice in several ways, but it's interesting that in Orozco, the second notice was a notice to appear. It was not a notice of hearing. It was a notice to appear, and it was a styled document as per what Congress had required. We're not allowed to go to a dictionary decision of are meaning many or few or decide whether it makes sense or doesn't make sense. We have to look at the plain meaning of the statute. The phrase notice of hearing or anything resembling it doesn't appear in the law. Notice to appear appears in the law, and that's what happened in the second notice in Orozco, which changed the place of the court. And that's why Orozco foresaw what was going to come. And Pereira came and said you just can't do that. And when I read recently the amicus brief of the former judges of the immigration court, many of them from our third circuit, including Jeffrey Chase, they said it's not anything that's difficult to do. We have the computerization. We have a place on the notice of appear, notice to appear, and that's the solution to a defect. A new notice to appear that ensures the rights as per the statute as the court requires. Thank you. Anything else, Judge Fischer? I do not.